ROBERT WATKINSON *vs.* HENRY L. ELLSWORTH.

A written contract between A and B recited that A had advanced capital which B had invested in lands in A's name, and provided that A should hold the lands for five years unless by mutual consent any of them should be sold within that time—that he should be reimbursed for his capital with interest by sale of the lands—that he should allow B half the profits after deducting the capital and interest—that if the capital and interest should be reimbursed by partial sales the residue of the land should remain in the hands of A for the joint benefit of A and B until the expiration of said five years unless sooner sold and divided—that B should "take the care and agency" of the lands—that no compensation should be charged by either party for personal services—that B should purchase the lands or the residue of them of A at the expiration of the five years, on certain specified terms, if A or his heirs should request it and prefer it to the chance of profits which might accrue to A after closing the sales of the lands—and that if B should neglect to pay for the lands upon those terms for ninety days after the expiration of the five years on demand made, A might sell the lands, and if the net proceeds of the sales should not be equal to the amount of capital and ten per cent. annual profit then B should make good the deficiency;—the contract further empowering

Watkinson *v.* Ellsworth.

B to sell, and convey the lands in the name of A. The agreement was afterwards by mutual consent extended for one year. No land was sold before the expiration of the six years, and at the expiration of that period it could not have been sold for enough to pay the capital of A with interest. A did not insist that B should purchase the lands according to the terms of the agreement, and B did not demand of A that the lands should be sold in order to ascertain whether there would be a surplus of profits. Three years afterwards B, without any authority except that contained in the agreement, which remained in his hands uncanceled, commenced selling the lands, and for several years continued to sell them, transmitting to A the proceeds thereof. B however did deduct and retain from the proceeds certain charges which were in fact for personal services within the meaning of the contract though he did not so regard them. Upon these facts it was held—that the contract was not broken by B; that it had not ceased to be operative by its own limitation or otherwise; that the sales were to be regarded as made under the contract; and that B was entitled to one-half of the "surplus profit" according to the terms of the contract, his charges for personal services being disallowed.

ASSUMPSIT upon a note for one thousand dollars, dated October 27th, 1854.

The material facts, as found by an auditor to whom the case was referred, were as follows.

On the 16th day of August, 1836, the plaintiff and defendant entered into a written agreement of the following tenor. "Whereas Henry L. Ellsworth, &c., made to me, the undersigned covenantor, R. Watkinson, &c., a proposition to invest money in western land, upon the following terms, to wit: the title of the land purchased to be vested in myself, with the obligation on my part to convey to said Henry half the profits, after deducting my capital invested and six per cent. for the use of the money, at the end of five or ten years, as most agreeable to myself, which capital and interest was to be reimbursed to me by sale; and the expenses of locating said land or purchasing the same was estimated at two and a half per cent., which sum of two and a half per cent. was to be divided equally between myself and the said Henry, which proposition was by me accepted, and, in pursuance of said agreement, said Henry has invested divers sums, and delivered or transferred to said Robert Watkinson the evidences of title, in a satisfactory manner, in and to the following lots and parcels of land, to wit: * * * * * * * *

Now therefore, in consideration of the above, &c., I, the said Robert Watkinson, do hereby covenant and agree with said Henry and his heirs and executors, and hereby bind my heirs and executors to fulfill the same, that I will hold said lands for the purpose above mentioned, for the term of five years from the time said capital was invested, (unless it shall be mutually agreed by said Watkinson and said Henry to sell the same or any part of the same sooner than five years;) and whenever the following sums, viz., $4,298.44, as cash, at 15th May, 1836, with interest on the same at six per cent. per annum, together with all sums expended for taxes or improvements made by said Watkinson with consent of said Henry, and interest of six per cent. on the same, shall be reimbursed by public sale or otherwise, that one-half of the surplus profit over and above the said money expended and interest on the same shall be paid to said Henry, his heirs and executors; and if said capital and interest shall be reimbursed by partial sales, the residue of land shall remain in the hands of said Watkinson for the joint benefit and use of said Watkinson and said Henry until the expiration of said five years unless sooner sold or divided. And said Henry is hereby fully empowered and authorized to take the care and agency of said lands and to do whatever is necessary to protect and preserve the same from waste, &c.; and the said Henry is further authorized and empowered to sell, deed and convey the same in my name or to bargain the same by article or agreement; provided, no sale or agreement shall be obligatory without my consent in writing first had and obtained, and no compensation is to be charged or allowed to said Henry or said Robert for any personal services either may render to this concern. In witness whereof I have hereunto set my hand and seal this 16th day of August, 1836.

　　　　　　　　　ROBERT WATKINSON.　　[L. S.]

\* 　\* 　\* 　\* 　\* 　\* 　And it is further agreed by said Henry as a consideration for said Robert Watkinson having made said advance of capital and agreeing to allow to said Henry L. Ellsworth half the profits as above stated, that said Henry does now bind himself, his heirs and assigns, to purchase

said lands or the residue of them of Robert Watkinson or his heirs at the expiration of five years from said 15th day of May last, and pay for the same a sum of money which shall be equal (when reckoned with any sums which may be received for sales of any part of said land) to all the advance made to said Henry and ten per cent. annual profits, with interest also on said profits compounded—provided that the said Robert or his heirs shall request it and prefer it to the chance of profits which might accrue to him, the said Robert, after closing the sales of said lands. And if the said Henry or his heirs shall neglect to pay said Robert or his heirs as above for said lands for the term of ninety days after the expiration of said five years, and on demand of said Robert, or his heirs, then said Robert or his heirs may make sale of the same at public auction or otherwise, and if the net proceeds of such sales are not equal to the amount of capital and ten per cent. annual profits as before stated, then said Henry or his heirs shall make good the deficiency, any thing in the annexed contract or agreement to the contrary notwithstanding. Hartford, August 16th, 1836. HENRY L. ELLSWORTH."

The title to the parcels of land mentioned in the agreement became vested in Watkinson. The agreement was by mutual consent extended for one year. None of the land was sold by Ellsworth before the expiration of six years from the date of the writing, and at the end of the six years the land could not have been sold for enough to pay Watkinson's advancement with six per cent. interest. At the end of the six years Watkinson did not insist on Ellsworth's purchasing the land according to the provision in the agreement, nor did Ellsworth demand of Watkinson that the land should be sold, to ascertain whether there would be a surplus of profits or to obtain such profits as are specified in the agreement. On the 13th of October, 1845, Ellsworth, without any authority except that contained in the agreement, which remained in his hands uncanceled, commenced the sale of the land, and from time to time for a number of years transmitted to Watkinson accounts of the sales and of his receipts and

charges, and transmitted also the moneys in his hands accruing from the sales.

The auditor found that, by virtue of the agreement above set forth, Watkinson, after the expiration of the six years, held the title to the lands for the benefit of Ellsworth as well as of himself until the lands should be disposed of by sale or otherwise, and that when the lands were disposed of, as it was admitted that they were, by the mutual consent of both parties, Ellsworth, by force of the agreement, became entitled to the surplus, if any, specified in the agreement, and that Ellsworth never relinquished his right to the surplus, and that Watkinson never by any act or declaration revived any right in Ellsworth to such surplus, if such right had, as the plaintiff claimed, expired or been lost. The only evidence upon which the auditor found that Ellsworth had an interest in the surplus was the contract itself, with the fact that it was suffered to remain uncanceled in Ellsworth's hands, the fact that it contained his only authority to sell, the fact that the lands were new lands in Indiana and Illinois, and the fact that Ellsworth did sell, and transmit amounts of the sales to Watkinson.

The net avails of the sales with interest to February 1st, 1855, amounted to $17,995.13, of which sum Watkinson received from Ellsworth $14,778.53, and Ellsworth retained the balance, $3,216.60. Watkinson's advancements with interest to the same date amounted to $9,148.79; so that the surplus of profit over and above advancements and interest was $8,846.34. If therefore this surplus was to be equally divided between the parties, according to the terms of the agreement, Watkinson had received $1,206.57 more than he was entitled to receive.

The note in suit was given by Ellsworth to Watkinson, but the only consideration for it was the supposed indebtedness of Ellsworth to Watkinson under the agreement.

Ellsworth rendered a large number of accounts of sales to Watkinson in which he charged commissions on sales, on collections and on payment of taxes. These commissions, amounting to $1,281.71, were deducted by him from the

Watkinson *v.* Ellsworth.

receipts on sales, and the balance only was transmitted to Watkinson.    Ellsworth also made charges for drawing deeds.

The plaintiff claimed before the auditor that the defendant, by making these charges and transmitting only the balance to the plaintiff, violated the contract and released the plaintiff from all liability under it.    The defendant claimed that he did not intend or regard these charges as charges for personal services.    The auditor found that the defendant did not, when he made the charges, suppose that he was making charges for personal services, and that he did not, by making such charges and transmitting such amounts, deprive himself of the right to claim a surplus under the contract; but the auditor found that the charges were in fact for personal services as specified in the contract, and therefore disallowed them.

The plaintiff objected to the admission of the agreement in evidence and to proof of any sales under it—claiming that the agreement had expired by its own limitation, and that the defendant had, by neglecting to claim the benefit of it at the proper time, lost all claim to any surplus profits, but the auditor overruled the objection.

The plaintiff remonstrated against the acceptance of the auditor's report, but the court accepted it and rendered judgment for the defendant, whereupon the plaintiff brought the record before this court by motion in error.

*W. D. Shipman* and *L. F. Robinson*, for the plaintiff, cited *Pease* v. *Gibson*, 6 Greenl., 81, *Moffat* v. *Laurie*, 29 Eng. L. & Eq., 224, *Chase* v. *Barrett*, 4 Paige, 148, *Baxter* v. *Wales*, 12 Mass., 365, and *Field* v. *Woodmancy*, 10 Cush., 427.

*Hungerford* and *Welch*, for the defendant, cited *Sigourney* v. *Munn*, 7 Conn., 11, 324.

SANFORD, J.    Sometime before the 15th of May, 1836, the parties in this case embarked in a speculation in western

lands. The plaintiff furnished the capital, and the defendant made the investment, taking the title in the plaintiff's name.

The property remained unsold until October 1845. The sale of it was then commenced by the defendant, and afterwards prosecuted until it was all disposed of. And from time to time the defendant paid over to the plaintiff portions of the proceeds of his sales, until October 1854, when, it being supposed that one thousand dollars at least was due to the plaintiff, the note in suit was given on that account, but no settlement of the account was ever made.

Before the auditor, the defendant, admitting that he had received for the property more than he had paid over to the plaintiff, claimed that he had a right to retain for his own use the whole balance in his hands at the time the note was given, and so the note was given by mistake and without consideration; and in support of this defence he offered the written instrument appended to the auditor's report with evidence of his sales under it. The plaintiff objected to the evidence, the auditor admitted it, and the superior court approved the ruling of the auditor. The admission of that evidence is the principal error complained of in the motion, and the only one to which our attention has been particularly directed on the argument of the case.

.The question arises upon the construction of the contract. The defendant claiming that that contract secured to him one half of the net profits of the whole adventure; and the plaintiff contending that "it had ceased to be operative by its own limitation before the debt for which the action was brought had accrued in favor of the plaintiff."

The original agreement under which the investment was made is recited in the preamble to the written contract. It provided that the plaintiff should furnish the capital, pay one half of the expenses of purchasing or locating the land, hold the title, reimburse himself for all his advancements with interest thereon at six per cent., and convey to the defendant half of the profits after deducting his capital and interest, at the end of five or ten years, "as most agreeable to himself;" and that the defendant should make the investment in the plain-

tiff's name and pay the other half of the expenses of the purchase or location.

It is conceded that the defendant performed his part of that agreement in a satisfactory manner. Under that agreement then the defendant acquired an interest of some kind in the property and its proceeds which a court of equity would recognize and protect. This the plaintiff's counsel admit, but they insist that, by the terms of the contract, the defendant's interest was limited to such profits only as should accrue within the period in the contract specified; which period they claim was five years, (afterwards enlarged to six;) and that within that period no profits whatever had accrued, because, (as it is found by the auditor) none of the land had then been sold, and all of it " could not have been sold for enough to pay the advancements of the plaintiff, with six per cent. interest thereon." Now it is to be observed, that by the original agreement no specific period is fixed for the continuance of the connection or the division of the profits. That was to be determined by the plaintiff " as most agreeable to himself." The whole legal title was in him, and he could dispose of it at pleasure. He might sell at once and reimburse himself, or he might hold the property unsold for five or ten years, " as most agreeable to himself." And it nowhere appears that he ever declared or made his election to terminate the connection, until after all the land was sold, nor even then.

On the 16th of August, the parties ascertained the amount of money which had been invested, and agreed upon the time from which the plaintiff's interest should be computed, and then they assumed toward each other, in relation to this property, the new and additional obligations contained in the instrument of that date. But no where in that instrument do we find any provision for the closing up of the concern at the end of five years, or any other definite period, except by the conveyance of all the property to the defendant upon the terms stated in his proposition. In that instrument, indeed, the plaintiff covenants that he will not sell any of the land (without the defendant's approbation and concur-

Watkinson *v.* Ellsworth.

rence) within five years; that is, he submits to the specified restriction upon his absolute power over the property for the period mentioned, and with the expiration of that period his absolute power revived. And that is the whole extent and operation of the covenant.

I can discover no such limitation as the plaintiff claims, either in the original agreement as recited in the preamble to the written contract, or in any of the provisions of that instrument. Indeed, the construction contended for by the plaintiff seems to me alike uncalled for by the language, and inconsistent with some of the essential provisions, of the instrument itself. Thus, the plaintiff covenants " to hold the land for the purposes above mentioned," (that is, for the purposes specified in the recited contract under which it was acquired,) " for the term of five years," unless he and the defendant shall agree upon an earlier sale, and that " whenever his advancements and interest shall be reimbursed by public sale or otherwise," he will pay over half of the surplus profits to the defendant. Now the plaintiff's capital was to be reimbursed by sale :—that was the mode agreed upon, and the mode in which the question whether profits had accrued or not was to be determined. But the great object of this new contract seems to have been to provide for the holding of the land unsold for five years at least, in order that time might be allowed for it to rise in value, so that the time referred to in connection with the fact of reimbursement by the word " whenever," must be after the five years mentioned should have elapsed. As if the plaintiff in terms had said, " I am to be reimbursed by the sale of land ; a sale shall not be made (unless we both agree to it,) within five years at least; but whenever I am reimbursed, and therefore, whenever the sale necessary to produce such reimbursement shall be made, I will pay over to the defendant one-half of the surplus profits of the investment."

In view of the fact that the question whether profits had accrued or not could be determined only by a sale of the land, or so much of it as to reimburse the plaintiff's capital

and interest, it seems unreasonable to suppose that the parties intended to make the defendant's right to profits dependent upon a sale within a period during which the plaintiff, at the defendant's instance, covenanted to withhold the property from the market altogether.

Again, the condition annexed to the defendant's proposition to take the land at the end of five years,—provided the plaintiff should "prefer it," (that is, prefer his whole advancements and compound interest thereon at ten per cent. at once) " to the chance of profits which might accrue to him the said Robert after closing the sales of said land,"—upon the plaintiff's construction would be altogether out of place. It carries the implication, that the non-acceptance of the proposition involves the alternative of a future sale, and that alternative alone. But upon the plaintiff's theory,—that in the event supposed the land was to become the absolute property of the plaintiff, discharged from the defendant's original claims upon it and its proceeds,—the natural, and indeed the only alternative which such non-acceptance would involve, would be, not a sale only, or " the closing of the sales," but whatever disposition an absolute owner, under any circumstances, might choose to make of his own estate.

If, therefore, the parties had intended that the defendant's interest in the property should become extinct unless within five years some profits should have been realized, the idea that then the plaintiff must either convey all the unsold property to the defendant upon the terms proposed in the instrument or sell it in some other manner and " close the sales " of it, or that he should look to that issue as the sole foundation for his preference, I think would never have occurred to them. But upon the defendant's construction, the condition and the implication which it carries are both pertinent and natural.

Considerable stress has been placed upon the expression— " provided the said Robert or his heirs " " shall prefer it to the chance of profits which might accrue to him the said Robert "—as indicating that all the profits accruing from sales after the expiration of the five years would be his. In

our judgment the plaintiff derives little aid from this expres-sion. The sentence is incumbered with a reference to the plaintiff's heirs, which gave occasion for the employment of the word " the," where but for such reference " his " would naturally have been used, and relieved the sentence from much if not all of its obscurity. It would then have read— " provided the said Robert shall request it and prefer it to his chance of profits which might accrue to him," &c. And the inquiry would have been what his chance was or would be, —for the whole of the profits, or for half? And we think it is doing no violence to the language used, and is more in ac-cordance with the general scope and tenor of the instrument, to make the construction of this sentence, as it stands, depend upon an answer to the same inquiry :—what was the chance for profits which might accrue to him the said Robert, &c. ?—the answer to the inquiry in both cases being,—that chance to which he was entitled by the con-tract,—a chance for those profits and those only, whether the whole surplus or only half of it, to which the contract gave him right. Those only could accrue to him.

It was admitted in the argument, that the property being by the plaintiff's covenant locked up from market for five entire years, might have been sold for the benefit of both parties within a reasonable time thereafter, if any profits could have been produced thereby. And it does not appear that all the property was not in fact sold within such rea-sonable time. What is " reasonable time " is a question always dependent upon circumstances. And in this case it is to be recollected that abundant security for the return of his whole advancements and compound interest thereon at ten per cent. had been tendered to the plaintiff, and that the property in question was of a kind which could not be forced upon the market but at the hazard of a ruinous sacrifice. And it is to be recollected also, that after the close of the period in question, the plaintiff's power of sale, as well as his power to revoke the authority of the defendant, was unlim-ited. But he did nothing. For more than three years no sale was made, and the revocation of the defendant's power

was never attempted. The instrument evidencing his appointment remained in his hands uncanceled and unrevoked; and, until the property was all disposed of, the defendant, authorised by that instrument alone, continued to execute all the powers which it purported to confer, not only without rebuke but with the plaintiff's approbation.

There is certainly great force in the plaintiff's argument from the defendant's charges of commissions on his sales and collections and for drawing deeds, that the defendant's " practical construction " was then the same as the plaintiff contends for now. And we are by no means sure, that if the question of fact in this part of the case had been submitted to us, upon this evidence alone, we should have come to the same conclusion as the auditor. But the auditor, as we presume upon adequate evidence, has found that " the defendant did not, when he made those charges, suppose that he was making charges for personal services." And, sitting here, we have no authority upon a question of fact to reverse or disregard the finding of the auditor. And we think, that in holding that the mistake of the defendant in regard to the meaning of the term " personal services " in the contract, upon the meaning of which expression depended his right to make the charges alluded to, was not such a violation of the contract as worked a forfeiture of his right to profits under it, the auditor was clearly right.

The authorities cited by the plaintiff's counsel have not been overlooked, but their bearing upon the questions under discussion in the case at bar is not in our judgment so obvious or important as to require any particular discussion of them in this opinion.

The judgment of the superior court must be affirmed.

In this opinion Hinman, J., concurred; Storrs, C. J., dissented; Ellsworth, J., being disqualified by relationship to the defendant, did not sit, Judge Sanford taking his place.

Judgment affirmed.